**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| SAMANTHA LLOYD, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | Civil Action No. 24-cv-01686-LKG |
| ) | |
| v. ) | Dated:  February 14, 2025 |
| ) | |
| PRINCE GEORGE'S COUNTY, ) | |
| MARYLAND, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**

## I.    INTRODUCTION

In this civil action, the Plaintiffs, the Estate of Domonique Thurston, Samantha and
Douglas Lloyd, bring claims under 42 U.S.C. § 1983, based upon violations of the Eighth and
Fourteenth Amendments of the United States Constitution, Articles 24 and 25 of the Maryland
Declaration of Rights of the Maryland Constitution and various state tort law claims, against the
Defendants, Prince George's County, Maryland (the "County"), Correne Labbé, Gregory Smith,
Harry Hilton, Jeffrey Logan, John or Jane Doe 1 and John or Jane Does 2-25 (the "Individual
Defendants").  ECF No. 3.

The Defendants have moved to dismiss the complaint, or, alternatively, for summary
judgment, pursuant to Fed. R. Civ. P. 12(b)(6) and 56.  ECF No. 18.  The motion is fully briefed.
ECF Nos. 18 and 19.  No hearing is necessary to resolve the motion.  L.R. 105.6 (D. Md. 2023).
For the reasons that follow, the Court:  (1) **GRANTS-in-PART** and **DENIES-in-PART** the
Defendants' motion to dismiss, or, in the alternative, for summary judgment; (2) **DISMISSES** all
claims against the Individual Defendants in their official capacities; (3) **DISMISSES** the
Plaintiffs' negligence claim against the County in Count V of the complaint; and (4)
**DISMISSES** the Plaintiffs' intentional infliction of emotional distress claim in Count VI of the
complaint.

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

### A.    Factual Background

This case arises out of the tragic death of Domonique Thurston, which occurred during his incarceration at the Prince George's County Correctional Center ("PGCCC"), following an altercation with another inmate, on June 20, 2022.  ECF No. 3 at ¶ 5.  In the complaint, the Plaintiffs bring claims for:  (1) Section 1983 and Section 1988 violations (deliberate indifference under the Fourteenth Amendment) against all Defendants (Count I); (2) Section 1983 and Section 1988 violations (deliberate indifference under the Eighth and Fourteenth Amendments) against Defendants John and Jane Does 2 through 25 (Count II); (3) violation of Article 24 of the Maryland Declaration of Rights of the Maryland Constitution against all Defendants (Count III); (4) violation of Article 25 of the Maryland Declaration of Rights of the Maryland Constitution against Defendants John and Jane Does 2 through 25 (Count IV); (5) negligence against all Defendants (Count V); and (6) intentional infliction of emotional distress against all Defendants (Count VI).  *Id.* at ¶¶ 96-149.  As relief, the Plaintiffs seek, among other things, to recover compensatory and punitive damages, attorneys' fees and costs from the Defendants.  *Id.* at Prayer for Relief.

<u>The Parties</u>

Plaintiff, Samantha Lloyd, is the appointed special administrator for the Estate of Domonique Thurston, and she is resident of Maryland.  *Id.* at ¶ 23.

Plaintiff, Douglas Lloyd, is Mr. Thurston's biological father, and he is a resident of Maryland.  *Id.* at ¶ 24.

Defendant, Prince George's County, Maryland, is a chartered county in the state of Maryland.  *Id.* at ¶ 25.

Defendant, Corenne D. Labbé, was the Director of the Prince George's County Department of Corrections during Mr. Thurston's incarceration at the PGCCC.  *Id.* at ¶ 26.

---

[1] The facts recited in this memorandum opinion are taken from the complaint; the Defendants' motion to dismiss, or, alternative motion for summary judgment and the memorandum in support thereof; and the Plaintiffs' response in opposition thereto.  ECF Nos. 3, 18, 18-1 and 19.

Defendant, Gregory K. Smith, was the Acting Deputy Director for the Operations Bureau of the Prince George's County Department of Corrections during Mr. Thurston's incarceration at the PGCCC.  *Id.* at ¶ 27.

Defendant, Harry L. Hilton, was the Chief of the Operations Division of the Prince George's County Department of Corrections during Mr. Thurston's incarceration at the PGCCC. *Id.* at ¶ 28.

Defendant, Jeffrey Logan, was the Chief of the Population Management Division of the Prince George's County Department of Corrections during Mr. Thurston's incarceration at the PGCCC.  *Id.* ¶ 29.

Defendant John or Jane Doe 1 was the Medical Director, or person responsible for medical services at the Prince George's County Department of Corrections during Mr. Thurston's incarceration at the PGCCC.  *Id.* at ¶ 30.

Defendants John or Jane Does 2 through 25 (hereinafter "Does 2-25") are correctional officers working at the PGCCC during the period of Mr. Thurston's incarceration.[2]  *Id.* at ¶ 31.

<u>Mr. Thurston's History Of Mental Illness</u>

As background, the Plaintiffs allege in this case that Mr. Thurston has a long history of mental illness.  In this regard, Mr. Thurston was born premature, weighing 5 pounds and 11 ounces at birth and spending 10 days in the Neonatal Intensive Care Unit.  *Id.* at ¶ 32.  Mr. Thurston began exhibiting signs of abnormal development and aberrant behavior soon after birth. *Id.*  And so, the District of Columbia Public School system classified Mr. Thurston as intellectually disabled by age five or six, and enrolled him in special education.  *Id.* at ¶ 34.

In January 2020, Mr. Thurston was arrested and incarcerated in Washington, D.C.  *Id.* at ¶ 43.  While incarcerated, Mr. Thurston attempted suicide twice and reported that other inmates had attempted to sexually assault him, the water was poisoned and jail staff were spitting in his food and hiding medication in his sandwiches.  *Id.* at ¶ 44.  And so, on May 8, 2020, Judge Juliet

---

[2] The Plaintiffs allege that these unnamed and unidentified individuals include personnel with direct interaction with Mr. Thurston and who would have been responsible for Mr. Thurston's intake, processing, placement in solitary confinement, supervision while in solitary confinement, and supervision when in the general population.  ECF No. 3 at ¶ 31.  The Plaintiffs also allege that these individuals were responsible for initiating emergency procedures necessary to respond to violent altercations in the PGCCC and to provide medical care for injured detainees.  *Id.*

McKenna of the District of Columbia Superior Court found Mr. Thurston mentally incompetent and ordered him committed to St. Elizabeths Hospital to participate in treatment for the restoration of his competency to stand trial. *Id*. at ¶ 45.

The Plaintiffs allege that, upon his admission to St. Elizabeths Hospital, Mr. Thurston presented as paranoid, disorganized, delusional, agitated, manic, incoherent, nonsensical and grandiose. *Id*. at ¶ 10. The Plaintiffs also allege that Mr. Thurston exhibited signs consistent with severe mood disorder and psychosis, including loud, rapid, pressured speech and flight of ideas. *Id*. at ¶ 10. Mr. Thurston remained in treatment at St. Elizabeths Hospital for over a year, during which he was diagnosed with Schizophrenia, Attention Deficit Hyperactivity Disorder ("ADHD"), mood disorder (including Bipolar 1 Disorder) and Post Traumatic Stress Disorder ("PTSD"). *Id*. at ¶ 11. Psychological testing also revealed Mr. Thurston's IQ to be 68, which meant that he was intellectually disabled. *Id*. The Plaintiffs allege that, given Mr. Thurston's behavior and intellectual disability, his condition would have been obvious to even the casual observer. *Id*. at ¶ 50.

Mr. Thurston's Pre-Trial Detention And Solitary Confinement

In August, 2021, Mr. Thurston came to the PGCCC after having been arrested on August 11, 2021, as the primary suspect in an armed carjacking and he was remanded to the custody of the PGCCC to await trial. *Id*. at ¶¶ 6, 9 and 51. Mr. Thurston was placed in solitary confinement for approximately eight to nine months while incarcerated at the PGCCC. *Id*. at ¶¶ 16 and 18. While in solitary confinement, Mr. Thurston made intermittent contact with his family members and exhibited similar signs of paranoia that marked his mental illness and psychosis from his prior incarceration in D.C. *Id*. at ¶ 20.

The June 20, 2022, Incident

On June 20, 2022, Mr. Thurston was released from solitary confinement into the general population. *Id*. at ¶ 89. On the day that Mr. Thurston was released from solitary confinement, another inmate awaiting trial at the PGCCC, Brandon Smothers, stabbed Mr. Thurston in the abdomen and chest at least 14 times. *Id*. at ¶¶ 21 and 93. Tragically, by the time the Prince George's County Department of Corrections-Emergency Services Team arrived at the scene, Mr. Thurston had died. *Id*. at ¶ 95.

<u>The Plaintiffs' Allegations</u>

The Plaintiffs allege in this action that the Defendants violated Mr. Thurston's constitutional rights and Maryland law, by placing him in solitary confinement, given his mental health conditions, by failing to prepare him to return to the general population at the PGCCC and by placing Mr. Smothers in the general population at the PGCCC. *See generally* ECF No. 3. In this regard, the Plaintiffs allege that solitary confinement exacerbated Mr. Thurston's untreated paranoia and psychosis, which led him to perceive that other inmates were out to get him. *Id*. at ¶ 21. The Plaintiffs also allege that this perception likely precipitated Mr. Thurston's altercation with Mr. Smothers. *Id*. And so, the Plaintiffs contend that the Defendants failed to adequately treat Mr. Thurston's mental illness, although the Defendants had knowledge of Mr. Thurston's severe mental illness and intellectual disability since his initial intake and screening at the PGCCC, and had knowledge of the adverse impact of solitary confinement on his mental illness. *Id*. at ¶¶ 55, 56 and 59.

In addition, the Plaintiffs allege that the Defendants should not have allowed Mr. Smothers to be placed with the general population, because he had been charged with a violent murder. *Id*. at ¶ 22. Lastly, the Plaintiffs allege that the correctional officers failed to promptly seek emergency assistance when Mr. Smothers assaulted Mr. Thurston, in violation of PGCCC policy. *Id*. at ¶¶ 63-64.

Specifically, with regards to their Section 1983 and Section 1988 Fourteenth Amendment claim in Count I of the complaint, the Plaintiffs allege that the Defendants intentionally, knowingly, recklessly, or with deliberate indifference acted, or failed to act, to appropriately address Mr. Thurston's mental illness and intellectual disability. *Id*. at ¶ 106. In this regard, the Plaintiffs allege that the Defendants knew or should have known about Mr. Thurston's mental illness and intellectual disability, because his condition was open and obvious, and documented in his criminal history file or intake files. *Id*. at ¶ 109. The Plaintiffs also allege that the Defendants' placement of Mr. Thurston in solitary confinement caused his mental illness to deteriorate further, allowing Mr. Thurston to become a target of other inmates for violence and abuse, upon release back into the general population. *Id*. at ¶ 110. And so, the Plaintiffs contend that the Defendants intentionally, knowingly, recklessly, or with deliberate indifference acted or failed to act, to appropriately protect Mr. Thurston when they placed Mr. Smothers, a suspect of

murder, into the general population where his history of violence would have caused him to be a danger to others. *Id*. at ¶ 112.

With regards to their Section 1983 and 1988 claims based upon the Eighth and Fourteenth Amendments in Count II of the complaint, the Plaintiffs allege that Does 2-25 knew that Mr. Thurston suffered from severe mental illness and was intellectually disabled, from Mr. Thurston's criminal proceedings and their interactions with Mr. Thurston during intake and other close encounters in the PGCCC. *Id*. at ¶ 122. Given this, the Plaintiffs also allege that Does 2-25 knew that Mr. Thurston's mental health would deteriorate when placed in solitary confinement. *Id*. at ¶ 123. And so, the Plaintiffs contend that Mr. Thurston was placed in solitary confinement, where his mental health deteriorated, and was ultimately tragically murdered, because of Does 2-25's actions. *Id.* at ¶ 124.

In Count III of the complaint, the Plaintiffs allege that all Defendants violated Article 24 of the Maryland Declaration of Rights of the Maryland Constitution, based upon the aforementioned conduct, because all Defendants were public officials or employees carrying out their official responsibilities in accordance with state law. *Id*. at ¶ 128. Likewise, in Count IV of the complaint, the Plaintiffs allege that Does 2-25 also violated Article 25 of the Maryland Declaration of Rights of the Maryland Constitution, because these Defendants were public officials or employees carrying out their official responsibilities in accordance with state law. *Id*. at ¶ 132.

With regards to the Plaintiffs' negligence claim in Count V of the complaint, the Plaintiffs allege that Defendants Labbé, Smith, Hilton and Logan had a duty to protect individuals suffering from mental illness from harm while held at the PGCCC, by adopting and implementing appropriate policies and procedures and managing and training the staff and employees of the facility. *Id*. at ¶¶ 137-144. In this regard, the Plaintiffs allege that Defendant Labbé's duty would include protecting individuals with mental illness from harm while held at the PGCCC by adopting and implementing appropriate policies and procedures and managing and training the staff and employees of the facility. *Id*. at ¶ 137. The Plaintiffs also allege that Defendant Smith's duty would include protecting individuals with mental illness from harm while held at the PGCCC by adopting and implementing appropriate policies and procedures and managing and training the staff and employees of the facility. *Id*. at ¶ 138. The Plaintiffs further allege that Defendant Hilton's duty would include the management and training of correctional

officers to identify and appropriately protect and treat individuals with mental illness. *Id.* at ¶ 139. Lastly, the Plaintiffs also allege that Defendant Logan's duty would include policies and procedures specifically on the placement of individuals in solitary confinement. *Id.* at ¶ 140. And so, the Plaintiffs allege that the Defendants breached these duties by failing to adopt, implement, train or manage staff and employees on the appropriate treatment of individuals suffering from severe mental illness. *Id.* at ¶¶ 137-140.

The Plaintiffs also allege that Defendant John or Jane Doe 1, as Medical Director of the PGCCC, had a duty to protect individuals suffering from mental illness from harm by adopting and implementing appropriate policies and procedures, including educating other staff members in the PGCCC to the dangers posed by solitary confinement and general incarceration to individuals suffering with severe mental illness. *Id.* at ¶ 141. In this regard, the Plaintiffs allege that Defendant John or Jane Doe 1 breached this duty, by failing to adopt, implement, train or educate staff on the appropriate treatment of individuals suffering from severe mental illness. *Id.*

In addition, the Plaintiffs allege that Does 2-25, as correctional officers at the PGCCC with direct interactions with Mr. Thurston, had a duty to protect Mr. Thurston from harm, by following protocols and procedures for the treatment of inmates with severe mental illness, by alerting superiors to Mr. Thurston's severe mental illness, by not placing Mr. Thurston in solitary confinement, by stopping the fight between Mr. Thurston and Mr. Smothers and by promptly calling a medical code once they saw Mr. Thurston had been injured by Mr. Smothers. *Id.* at ¶ 142. The Plaintiffs allege that Does 2-25 breached this duty by failing to alert their superiors to Mr. Thurston's severe mental illness, by failing to refrain from placing Mr. Thurston in solitary confinement, failing to intervene in the fight between Mr. Thurston and Mr. Smothers and by failing to promptly call for a medical code once they saw that Mr. Thurston had been injured. *Id.* The Plaintiffs further allege that the Defendants' actions were the actual and proximate cause of Mr. Thurston's death. *Id.* at ¶¶ 143-144.

Lastly, with regards to the Plaintiffs' intentional infliction of emotional distress claim in Count VI of the complaint, the Plaintiffs allege that the Defendants created a system whereby individuals with severe mental illness are placed in solitary confinement, despite ample evidence that such placement will necessarily harm those individuals. *Id.* at ¶ 148. In this regard, the Plaintiffs allege that the Defendants caused Mr. Thurston emotional distress by placing him in solitary confinement while unmedicated and suffering from severe mental illness and

intellectually disability.  *Id.*  And so, the Plaintiffs allege that Mr. Thurston experienced severe emotional distress, including confusion, fear, anxiety and paranoia, all of which were exacerbated by his placement in solitary confinement.  *Id.*

### B.    Procedural History

On June 11, 2024, the Plaintiffs filed the complaint.  ECF No. 3.  On August, 20, 2024, the Defendants filed a motion to dismiss, or, in the alternative, for summary judgment, pursuant to Fed. R. Civ. P. 12(b)(6) and 56, and a memorandum in support thereof.  ECF Nos. 18 and 18-1.

On September 19, 2024, the Plaintiffs filed a response in opposition to the Defendants' motion.  ECF No. 19.

The Defendants' motion to dismiss, or, in the alternative, for summary judgment, having been fully briefed, the Court resolves the pending motion.

## III.    LEGAL STANDARDS

### A.    Rule 12(b)(6)

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must allege enough facts to state a plausible claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible when "the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556). When evaluating the sufficiency of a plaintiff's claims under Fed. R. Civ. P. 12(b)(6), the Court accepts factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff.  *Nemet Chevrolet, Inc. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005) (citations omitted).  But, the complaint must contain more than "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement."  *Nemet Chevrolet*, 591 F.3d at 255.  And so, the Court should grant a motion to dismiss for failure to state a claim if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  *GE Inv. Private Placement Partners II, L.P. v. Parker*, 247 F.3d 543, 548 (4th Cir. 2001) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 249-50 (1989)).

**B.  Rule 56**

A motion for summary judgment filed pursuant to Fed. R. Civ. P. 56 will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  And so, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co., Inc. v. Cameo Props*., 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co., Ltd*., 601 F.2d 139, 141 (4th Cir. 1979).

When ruling on a motion for summary judgment, the Court must construe the facts alleged in the light most favorable to the party opposing the motion.  *See United States v. Diebold*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co*., 773 F.2d 592, 595 (4th Cir. 1985).  In this regard, the moving party bears the burden of showing that there is no genuine issue as to any material fact and that the party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Catawba Indian Tribe of S.C. v. State of S.C*., 978 F.2d 1334, 1339 (4th Cir. 1992), *cert. denied*, 507 U.S. 972 (1993).  But, a party who bears the burden of proof on a particular claim must also factually support each element of his or her claim.  *See Celotex Corp*., 477 U.S. at 322-23.  Given this, "a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial."  *Id*. at 323.  And so, on those issues on which the nonmoving party will have the burden of proof, it is the nonmoving party's responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial.  *See Anderson*, 477 U.S. at 256.

In this regard, the United States Court of Appeals for the Fourth Circuit has held that, "[a] mere scintilla of evidence in support of the nonmovant's position will not defeat a motion for summary judgment."  *Detrick v. Panalpina, Inc*., 108 F.3d 529, 536 (4th Cir. 1997).  And so, there must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Anderson*, 477 U.S. at 249-50 (internal citations omitted).[3]

---

[3] A motion to dismiss under Fed. R. Civ. P. 12(b)(6) "must be treated as one for summary judgment" when "matters outside the pleadings are presented" to the Court.  *See* Fed. R. Civ. P. 12(d).  But, the United States Court of Appeals for the Fourth Circuit has held that documents are not considered to be matters outside of the pleadings if they are "explicitly incorporated into the complaint by reference," or

### C. Section 1983 And *Monell* Claims

Title 42, United States Code, Section 1983 provides a mechanism for individuals who have had their constitutional rights violated to seek a remedy against individual state actors. *See* 42 U.S.C. § 1983 (providing that if any person acting "under color of any statute, ordinance, regulation, custom, or usage, of any State" deprives a United States citizen of any constitutional right, that person may be liable in a suit for money damages). Section 1983 permits a plaintiff to bring a claim directly against a municipality if the municipality causes a deprivation of a constitutional right through an official policy or custom. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). But, "a municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (emphasis in original). Given this, a local government, such as the County, "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell*, 436 U.S. at 694. And so, the Supreme Court has held that a municipality may be liable under § 1983 "when a municipality's policy or custom has caused the violation of an individual's federal rights." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 296 (2002) (Stevens, J., dissenting).

A *Monell* plaintiff need only meet the basic "short and plain statement" requirement of Fed. R. Civ. P. 8(a) in the complaint. *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168-69 (1993). But, the United States Court of Appeals for the Fourth Circuit has held that a *Monell* plaintiff must adequately plead "the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of their rights." *Jordan ex rel. Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir. 1994). The Fourth Circuit has also held that "a municipal policy or custom giving rise to § 1983 liability will not be inferred merely from municipal inaction in the face of isolated constitutional deprivations by municipal employees." *Milligan v. City of Newport News*, 743 F.2d 227, 230 (4th Cir. 1984). And so, the municipality's conduct must demonstrate "deliberate indifference to

---

are "integral to the complaint and there is no dispute about the document's authenticity." *Goines v. Valley Cmty. Servs. Bd.,* 822 F.3d 159, 166 (4th Cir. 2016) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 322 (2007)). In the instant case, the Court does not consider matters outside of the pleadings. And so, this motion need not be treated as one for summary judgment.

the rights of potentially affected citizens," in order for conduct to be properly thought of as a "policy." *Jones v. Wellham*, 104 F.3d 620, 626 (4th Cir. 1997).

In this regard, the Fourth Circuit has held that a plaintiff can demonstrate the existence of a policy or custom for which a municipality may be liable in four ways:  "(1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that manifest[s] deliberate indifference to the rights of citizens; or (4) through a practice that is so 'persistent and widespread' as to constitute a custom or usage with the force of law." *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (citation omitted) (brackets in original).[4]  This Court has also held that "[a] plaintiff must allege numerous particular instances of unconstitutional conduct in order to establish a custom or practice, because 'a municipality is not liable for mere isolated incidents of unconstitutional conduct by subordinate employees.'" *Weeden v. Prince George's Cnty.*, No. 17-2013, 2018 WL 2694441, at *4 (D. Md. June 4, 2018) (quoting *Smith v. Ray*, 409 F. App'x. 641, 651 (4th Cir. 2011); *see also Talley v. Anne Arundel Cnty.*, No. 21-347, 2021 WL 4244759, at *14 (D. Md. Sept. 17, 2021) ("Alleging such a [persistent and widespread] practice requires a plaintiff to plead prior instances of similar conduct.").

Relevant here, to establish supervisory liability under § 1983, a plaintiff must show:  (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994),

---

[4] "Under a *Monell* condonation theory of liability, a municipality is liable if its policymakers fail "'to put a stop to or correct a widespread pattern of unconstitutional conduct.'" *Cottman v. Balt. Police Dep't*, No. 21-837, 2022 WL 137735, at *6 (D. Md. Jan. 13, 2022) (quoting *Owens v. Balt. City State's Attorney's Office*, 767 F.3d 379, 402 (4th Cir. 2014)).  To state a claim for liability under this theory, a plaintiff must point to:  "'[A] persistent and widespread practice[] of municipal officials,' the 'duration and frequency' of which indicate that policymakers (1) had actual or constructive knowledge of the conduct, and (2) failed to correct it due to their 'deliberate indifference.'  Both knowledge and indifference can be inferred from the 'extent' of employees' misconduct.  Sporadic or isolated violations of rights will not give rise to *Monell* liability; only 'widespread or flagrant' violations will." *Owens*, 767 F.3d at 402-03 (internal citations omitted) (quoting *Spell v. McDaniel*, 824 F.2d 1380, 1390 (4th Cir. 1987)).

*cert. denied*, 513 U.S. 813 (1994). To show a "pervasive and unreasonable risk of constitutional injury," a plaintiff must show that the conduct is "widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury." *Id.* (citing *Slakan v. Porter*, 737 F.2d 368, 373-374 (4th Cir. 1984).

### D. Deliberate Indifference Claims

The Eighth Amendment prohibits cruel and unusual punishment. U.S. Const. amend. VIII. This prohibition is applicable to the states through the Due Process Clause of the Fourteenth Amendment. *See Robinson v. California*, 370 U.S. 660 (1962).

When an incarcerated person bringing an Eighth Amendment cruel and unusual punishment claim is a "pretrial detainee and not a convicted prisoner," the Fourteenth Amendment, not the Eighth Amendment governs the claim. *Mays v. Sprinkle*, 992 F.3d 295, 300 (4th Cir. 2021) (citing *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988)). The Due Process Clause of the Fourteenth Amendment requires that government officials not be deliberately indifferent to any serious medical needs of a pretrial detainee. *Mays v. Sprinkle*, 992 F.3d 295, 301 (4th Cir. 2021).

A pretrial detainee can prove a deliberate indifference claim based upon a serious medical condition, by showing "'deliberate indifference to serious medical needs' under cases interpreting the Eighth Amendment." *Id.* at 300; *see also Martin*, 849 F.2d at 870 (observing that "[t]he due process rights of a pretrial detainee are at least as great as the eighth amendment protections available to the convicted prisoner"); *Short v. Hartman*, 87 F.4th 593, 612 (4th Cir. 2023) (affirming the Eighth Amendment test remains sufficient but is not necessary). This test is satisfied by the showing of a subjective and objective element: (1) an objectively "serious" medical condition; and (2) that a prison official "had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Mays*, 992 F.3d at 300 (citing *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014)). In this regard, a condition is objectively serious if it is "diagnosed by a physician as mandating treatment" or is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Short*, 87 F.4th at 612 (quoting *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016)). Relevant here, the Fourth Circuit has found that solitary confinement imposes an

objective risk of serious harm to inmates under the Eighth Amendment. *See Porter v. Clarke*, 923 F.3d 348, 355-57 (4th Cir. 2019).

A pretrial detainee can also prove a deliberate indifference claim by showing that: (1) he had a medical condition or injury that posed a substantial risk of serious harm; (2) the defendant intentionally, knowingly, or recklessly acted, or failed to act, to appropriately address the risk that the condition posed; (3) the defendant knew or should have known (a) that the detainee had that condition and (b) that the defendant's action or inaction posed an unjustifiably high risk of harm; and (4) as a result, the detainee was harmed. *Short*, 87 F.4th at 611. Under this test, "the plaintiff [need not] show that the defendant had actual knowledge of the detainee's serious medical condition and consciously disregarded the risk that their action or failure to act would result in harm." *Id.* Rather, the plaintiff must show that the defendant acted or failed to act "in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Id.* But it is "not enough for the plaintiff to allege that the defendant negligently or accidentally failed to do right by the detainee." *Id.* at 611-12.

### E. Articles 24 And 25 Of The Maryland Declaration Of Rights

Article 24 of the Maryland Declaration of Rights states "[t]hat no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land." Md. Const. Decl. of Rts. art. 24. Article 24 protects due process rights and is the Maryland "analogue to the due process clauses of the Fifth and Fourteenth Amendments of the United States Constitution." *Rovin v. State*, 321 A.3d 201, 218 (Md. 2024) (citing *State v. Dett*, 891 A.2d 1113, 1120 n.3 (Md. 2006)). Article 24 is interpreted *in pari materia* with the Due Process Clause of the Fourteenth Amendment. *Doe v. Dep't of Pub. Safety & Corr. Servs.*, 971 A.2d 975, 982 (Md. Ct. Spec. App. 2009) (declining to interpret Article 24 more broadly than the Due Process Clause of the Fourteenth Amendment). Article 25 of the Maryland Declaration of Rights states "[t]hat excessive bail ought not to be required, nor excessive fines imposed, nor cruel or unusual punishment inflicted, by the Courts of Law." Md. Const. Decl. of Rts. art. 245. Article 25 is interpreted *in pari materia* with the Eighth Amendment. *Walker v. State*, 452 A.2d 1234, 1245 n.9 (Md. 1982); *see also Harris v. State*, 276 A.3d 1071, 1093 (Md. 2022).

### F.  Negligence And Intentional Infliction Of Emotional Distress

Under Maryland law, to properly plead a claim for negligence, a plaintiff must prove: "(1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual loss or injury, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty." *Todd v. Mass Transit Admin.*, 816 A.2d 930, 933 (Md. 2003); *see also Scott v. Watson*, 359 A.2d 548, 552 (Md. 1976).[5]  Whether a plaintiff has presented sufficient evidence of the elements of negligence is generally a question for the fact finder, but the existence of a legal duty is a question of law to be decided by the Court.  *See Corinaldi v. Columbia Courtyard, Inc.*, 873 A.2d 483, 489 (Md. Ct. Spec. App. 2005).

Under Maryland law, the elements of a claim for intentional infliction of emotional distress are:  (1) intentional or reckless conduct; (2) extreme and outrageous conduct; (3) a causal connection between the wrongful conduct and the emotional distress; and (4) severe emotional distress.  *Lasater v. Guttmann*, 5 A.3d 79, 89 ((Md. Ct. Spec. App. 2010), *cert. denied*, 417 Md. 502 (2011); *see also Harris v. Jones*, 380 A.2d 611, 614 (Md. 1977) (first case to recognize a claim for intentional infliction of emotional distress in Maryland).  Such claims are subject to a heightened pleading standard.  *See Davenport v. Maryland*, 38 F. Supp. 3d 679, 692 (D. Md. 2014).  And so, each element of an intentional infliction of emotional distress claim must be pled with specificity.  *See Foor Juvenile Servs. Admin.*, 552 A.2d 947, 949 (Md. Ct. Spec. App. 1989), *cert. denied*, 316 Md. 364 (1989); *accord Parker v. Ciena Corp.*, 787 F. App'x 817, 820 (4th Cir. 2019).

To show "intentional or reckless conduct," a plaintiff must allege facts that, if proven, would show that "the defendant either *desired* to inflict severe emotional distress, *knew* that such

---

[5] In determining the existence of a duty, the Court considers, among other things:

> The foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered the injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost and prevalence of insurance for the risk involved.

*See Corinaldi v. Columbia Courtyard, Inc.*, 873 A.2d 483, 489 (Md. Ct. Spec. App. 2005) (citations omitted).

distress was *certain or substantially certain* to result from his conduct, or acted recklessly in deliberate disregard of a *high degree of probability* that the emotional distress will follow." *Foor*, 552 A.2d at 959 (emphasis in original).   A foreseeable consequence of a defendant's actions "must be far more precise" than the "general range of harm" sufficient for a negligence claim because "it is the achievement of that consequence, from which the distress is expected to arise, that lies at the heart" of a claim for intentional infliction of emotional distress.  *Id*.  To show "extreme and outrageous conduct," a plaintiff must allege facts that, if proven, demonstrate the defendant's behavior was "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'"  *Lasater*, 5 A.3d at 89 (quoting *Harris*, 380 A.2d at 614).  Lastly, to show "emotional distress," a plaintiff must allege facts to show that "he suffered a *severely* disabling emotional response to the defendant's conduct," and that the distress was so severe that "no reasonable man could be expected to endure it."  *Thacker v. City of Hyattsville*, 762 A.2d 172, 197 (Md. Ct. Spec. App. 2000), *cert. denied*, 363 Md. 206 (2001) (citing *Harris*, 380 A.2d at 616).  Maryland courts have also held that a plaintiff must allege facts to show he is unable to function or tend to necessary matters.  *See Mitchell v. Balt. Sun Co*., 883 A.2d 1008, 1024-25 (Md. Ct. Spec. App. 2005) (citing *Hamilton v. Ford Motor Credit Co*., 502 A.2d 1057, 1064 (Md. 1986)).

### G.  Claims Against Government Officials And Governmental Immunity

A suit against an official in their official capacity is treated as a suit against the governmental entity for which the official works.  *Lowery v. Prince George's Cnty.*, 960 F. Supp. 952, 954 (D. Md. 1997) (citing *Gray v. Laws*, 51 F.3d 426, 431 (4th Cir. 1995)).  For this reason, a suit against a public official in their official capacity is duplicative of a suit against the governmental entity itself and can be dismissed in the interests of judicial economy.  *Snowden v. Prince George's Cnty. Dep't of Corr*., No. CV PJM 18-160, 2018 WL 3862253, at *3 (D. Md. Aug. 14, 2018) (dismissing claims against defendants in their official capacity because there was "no reason to keep the [defendants named in their official capacity] in the case when it is undisputed that the real party in interest is the County").

In Maryland, a "municipality or county is liable for its torts if it acts in a private or proprietary capacity, while it is immune if acting in a governmental capacity."  *Nam v. Montgomery Cnty.*, 732 A.2d 356, 362 (Md. 1999) (quoting *Godwin v. Cnty. Comm'rs*, 260 A.2d

295, 299 (Md. 1970)).  "Governmental" acts are those "performed [ ] for the common good of all" rather than "for the special benefit or profit" of the municipality.  *Tadjer v. Montgomery Cnty.*, 479 A.2d 1321, 1325 (Md. 1984).  Relevant here, Maryland courts have found that the maintenance of prisons and jails is a governmental function.  *See Jones v. Montgomery Cnty.*, No. 1910 Sept. term 2014, 2016 WL 1321396, at *4 (Md. Ct. Spec. App. Apr. 5, 2016) (quoting *Zilichikhis v. Montgomery Cnty.*, 115 A.3d 685, 705 (Md. Ct. Spec. App. 2015)) ("Applying these guidelines to the issue presented here, we note that the acts of the County in maintaining prisons and jails 'is sanctioned by legislative authority.'"); *see also Jones Hollow Ware Co. of Balt. City v. Crane*, 134 Md. 103, 115 (1919) (quoting William M. McKinney & Burdett A. Rich, *Establishment, Maintenance and Regulation of Prisons*, 21 RCL 1168 (1918)) ("The erection and operation of prisons and jails . . . is a purely governmental function, being an indispensable part of the administration of the criminal law.").

## IV.    ANALYSIS

The Defendants have moved to dismiss this matter, pursuant to Fed. R. Civ. P. 12(b)(6), or, alternatively, for summary judgment in their favor, pursuant to Fed. R. Civ. P. 56, upon the following grounds:  (1) the Plaintiffs have failed to allege sufficient facts to state a deliberate indifference claim under the Eighth and Fourteenth Amendments; (2) the undisputed material facts show that Mr. Thurston's mental illness was diagnosed and treated during his pretrial detention; (3) the complaint fails to allege facts to show the involvement of the Individual Defendants in the harm that Mr. Thurston suffered; (4) the claims brought against the Individual Defendants in their official capacities are the same claims brought against the County and, thus, should be dismissed as duplicative; (5) the County cannot be held liable for the non-constitutional torts alleged in the complaint under the doctrine of governmental immunity; (6) the Individual Defendants are entitled to public official immunity; and (7) the Plaintiffs fail to state a plausible a claim for intentional infliction of emotional distress.  ECF No. 18 at 10-24. And so, the Defendants request that the Court either dismiss the complaint, or enter judgment summarily in their favor.  *Id*. at 24.

The Plaintiffs counter that the Court should not dismiss their deliberate indifference, Maryland Declaration of Rights and tort claims, because they have pled sufficient facts in the complaint to support these claims.  ECF No. 19 at 10-29.  But, the Plaintiffs consent to the

dismissal of Counts V (negligence) and VI (intentional infliction of emotional distress) of the complaint with respect to the County and the Individual Defendants in their official capacities. *See* ECF No. 19 at 25 and 29. And so, the Plaintiffs request that the Court deny the Defendants' motion with regards to the remaining claims in the complaint. *Id.* at 29.

For the reasons that follow, a careful reading of the complaint shows that the Plaintiffs have alleged sufficient facts to state plausible deliberate indifference claims in the complaint. For this reason, the Plaintiffs also state plausible claims under Articles 24 and 25 of the Maryland Declaration of Rights.

But, a careful reading of the complaint shows that the Plaintiffs fail to state a plausible intentional infliction of emotional distress claim in this action. The Defendants have also shown that the claims against the Individual Defendants in their official capacities are duplicative of the claims against the County. In addition, the Defendants have shown that the County is entitled to governmental immunity with regards to the Plaintiffs' state tort law claims. And so, the Court: (1) GRANTS-in-PART and DENIES-in-PART the Defendants' motion to dismiss, or, in the alternative, for summary judgment; (2) DISMISSES all claims against the Individual Defendants in their official capacities; (3) DISMISSES the Plaintiffs' negligence claim against the County in Count V of the complaint; and (4) DISMISSES the Plaintiffs' intentional infliction of emotional distress claim in Count VI of the complaint.

> **1.    The Court Dismisses The Plaintiffs'
> Claims Against The Individual Defendants In Their
> Official Capacities And The Tort Claims Against The County**

As an initial matter, the Court DISMISSES the Plaintiffs' claims against the Individual Defendants in their official capacities, and against the County, in Counts V (negligence) and VI (intentional infliction of emotional distress) of the complaint.

A suit against an official in their official capacity is treated as a suit against the governmental entity for which the official works. *Lowery v. Prince George's Cnty.*, 960 F. Supp. 952, 954 (D. Md. 1997) (citing *Gray v. Laws*, 51 F.3d 426, 431 (4th Cir. 1995)). For this reason, a suit against a public official in their official capacity is duplicative of a suit against the governmental entity itself and can be dismissed in the interests of judicial economy. *Snowden v. Prince George's Cnty. Dep't of Corr.*, No. CV PJM 18-160, 2018 WL 3862253, at *3 (D. Md. Aug. 14, 2018).

The Plaintiffs bring claims against the Individual Defendants in their official capacities in the complaint. *See generally* ECF No. 3. Such claims should be treated as a suit against the governmental entity for which the Individual Defendants work, the County. *Lowery*, 960 F. Supp. at 954. And so, these claims are DISMISSED.

Under Maryland law, a "municipality or county is liable for its torts if it acts in a private or proprietary capacity, while it is immune if acting in a governmental capacity." *Nam*, 732 A.2d at 362 (quoting *Godwin*, 260 A.2d at 299). "Governmental" acts are those "performed [ ] for the common good of all" rather than "for the special benefit or profit" of the municipality. *Tadjer*, 479 A.2d at 1325.

In Counts V and VI of the complaint, the Plaintiffs assert tort claims against the County related to the maintenance and operation of the PGCCC, which is a county jail. *See* ECF No. 3 at ¶ 5; ECF No. 18 at 1. Maryland courts have found that the maintenance of prisons and jails is a governmental function. *See Jones*, 2016 WL 1321396, at *4. Given this, the County has governmental immunity from such claims. *Nam*, 732 A.2d at 362; *Jones*, 2016 WL 1321396, at *4. And so, the Court GRANTS the Defendants' motion as to Counts V and VI of the complaint against the County and DISMISSES these claims.

### 2.    The Plaintiffs State Plausible Deliberate Indifference Claims

A careful reading of the complaint also shows that the Plaintiffs have alleged sufficient facts to support their deliberate indifference claims in Counts I and II of the complaint.

The Plaintiffs can prove their deliberate indifference claims based upon a serious medical condition, by showing "'deliberate indifference to serious medical needs' under cases interpreting the Eighth Amendment." *Mays*, 992 F.3d at 300; *see also Martin*, 849 F.2d at 870 (observing that "[t]he due process rights of a pretrial detainee are at least as great as the eighth amendment protections available to the convicted prisoner"); *Short*, 87 F.4th at 612 (affirming the Eighth Amendment test remains sufficient but is not necessary). In this regard, a condition is objectively serious if it is "diagnosed by a physician as mandating treatment" or is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Short*, 87 F.4th at 612 (citing *Scinto*, 841 F.3d at 225). Relevant here, the Fourth Circuit has found that solitary confinement imposes an objective risk of serious harm to inmates under the Eighth Amendment. *See Porter*, 923 F.3d at 355-57.

The Plaintiffs can also prove their deliberate indifference claims by showing that: (1) Mr. Thurston had a medical condition or injury that posed a substantial risk of serious harm; (2) the Defendants intentionally, knowingly, or recklessly, acted or failed to act, to appropriately address the risk that the condition posed; (3) the Defendants knew or should have known that (a) that Mr. Thurston had that condition and (b) their action or inaction posed an unjustifiably high risk of harm; and (4) as a result, Mr. Thurston was harmed. *Short*, 87 F.4th at 611. Under this test, the Plaintiffs need not show that the Defendants had actual knowledge of Mr. Thurston's serious medical condition and consciously disregarded the risk that their action or failure to act would result in harm. *Id.* Rather, they must show that the Defendants acted or failed to act "in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Id.*

In Count I of the complaint, the Plaintiffs assert a deliberate indifference claim against all Defendants that is based upon Sections 1983 and 1988 and the Fourteenth Amendment. ECF No. 3 at ¶¶ 96-113. In this regard, the Plaintiffs generally allege that the Defendants "intentionally, knowingly, recklessly, or with deliberate indifference" failed to act to appropriately address Mr. Thurston's mental illness and intellectual disability. *Id.* at ¶106. The Court is satisfied that the Plaintiffs have pled sufficient facts to state a plausible deliberate indifference claim in Count I of the complaint for several reasons.

First, the Plaintiffs allege facts in the complaint, which taken as true, show that Mr. Thurston had a medical condition that posed a substantial risk of serious harm. In the complaint, the Plaintiffs allege several times that Mr. Thurston had long-suffered from an intellectual disability and had been diagnosed with severe mental illness, including Schizophrenia, ADHD, mood disorder (including Bipolar 1 Disorder), PTSD and Bipolar Disorder with Psychotic Features or Schizoaffective Disorder. *See id.* ¶¶ 11, 32-50, 105 and 121.

Second, the complaint also contains factual allegations to show that the Defendants intentionally, knowingly, or recklessly acted, or failed to act, to appropriately address the risk that Mr. Thurston's mental health condition posed. In this regard, the Plaintiffs allege that the "Defendants intentionally, knowingly, recklessly, or with deliberate indifference failed to implement and adhere to policies regarding the proper treatment of individuals with mental illness, the identification of individuals with mental illness, the use of solitary confinement for individuals with mental illness, and the placement of individuals with mental illness or violent

individuals into the general population." *Id*. at ¶ 106.  The Plaintiffs also allege that the Defendants were "made aware of the prevalence of individuals with mental health issues, including mental illness and mental retardation, at the [PGCCC] through [their] experience and exposure as jailers or as administrators aware of the societal trends, academic research, Maryland legislation, information provided by professional organizations, best practices policy papers, and litigation in Maryland, PG County, and around the country acknowledging the risk that incarceration generally and solitary confinement particularly poses with respect to pretrial detainees." *Id*.; *see also id*. at ¶¶ 67-81 (alleging that the Defendants were made aware of the risks of solitary confinement for those with mental illness, specifically, through academic research, Maryland legislation, information provided by professional organizations, policy papers and various court decisions around the country and in Maryland specifically).

Third, the complaint contains factual allegations to show that the Defendants knew, or should have known, about Mr. Thurston's mental illness and intellectual disability and that their actions posed an unjustifiably high risk of harm.  In this regard, the Plaintiffs allege that the "Defendants knew or should have known that Mr. Thurston had mental illness and mental retardation, because Mr. Thurston's condition was open and obvious" and that "[t]he presentation of his mental illness did not allow him to pass as a normal individual." *Id*. at ¶ 107. The Plaintiffs also allege that a "[r]eview of Mr. Thurston's criminal history file or other intake documentation related to past criminal conduct would have included information regarding Mr. Thurston's year-long commitment at St. Elizabeths Hospital and would have provided further information regarding Mr. Thurston's mental illnesses and mental retardation." *Id*. at ¶ 109.

Lastly, there are factual allegations in the complaint to show that Mr. Thurston was harmed, because of the Defendants' alleged actions.  Notably, the Plaintiffs allege in the complaint that the "Defendants' placement of Mr. Thurston in solitary confinement caused his mental illness to deteriorate further, making it difficult if not impossible for him to complain about his conditions." *Id*. at ¶ 110.  In this regard, the Plaintiffs allege that Mr. Thurston would have "experienced severe fear and anxiety, paranoia, and all other kinds of psychological torture visited upon individuals in solitary confinement" and that "[w]ithout medication to mediate Mr. Thurston's symptom[s], Mr. Thurston's mental and physical health would continue to deteriorate, and upon release back into the general population, Mr. Thurston would become a target of other inmates for violence and abuse." *Id*.

Given this, the factual allegations in the complaint, taken as true, are sufficient to state a plausible deliberate indifference claim in Count I of the complaint. And so, the Court DENIES the Defendants' motion to dismiss this claim.

A careful reading of the complaint also makes clear that the Plaintiffs have alleged a plausible deliberate indifference claim in Count II of the complaint. As discussed above, the Plaintiffs can prove a deliberate indifference claim, based upon a serious medical condition of a pretrial detainee, by showing "'deliberate indifference to serious medical needs' under cases interpreting the Eighth Amendment." *Mays*, 992 F.3d at 300. This test is satisfied by the showing of a subjective and objective element: (1) an objectively "serious" medical condition and (2) that a prison official "had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Mays*, 992 F.3d at 300 (citing *Jackson*, 775 F.3d at 178).

Here, the Plaintiffs allege that Mr. Thurston had been diagnosed with Schizophrenia, ADHD, mood disorder (including Bipolar 1 Disorder), PTSD and Bipolar Disorder with Psychotic Features or Schizoaffective Disorder and an intellectual disability, and also that his mental illness was objectively clear to anyone that encountered him. *See* ECF No. 3 at ¶ 121; *Short*, 87 F.4th at 612 (citing *Scinto*, 841 F.3d at 225). And so, the complaint contains facts to show that Mr. Thurston had an objectively serious medical condition.

The Plaintiffs also allege facts to show that the Defendants "had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Mays*, 992 F.3d at 300 (citing *Jackson*, 775 F.3d at 178). As discussed above, the Plaintiffs allege that the Mr. Thurston's mental health conditions would have been obvious to Does 2-25, based upon their interactions with him during the intake process and other close encounters during his detention at the PGCCC. *Id.* at ¶ 122. The Plaintiffs also allege that the Defendants were aware of the risks posed to individuals with mental illness while housed in a general prison environment and in solitary confinement. *Id.* at ¶ 123; *see also id.* at ¶¶ 67-81.

Given these factual allegations, the Court is also satisfied that the Plaintiffs state a plausible deliberate indifference claim in Count II of the complaint. And so, the Court DENIES the Defendants' motion to dismiss this claim.

### 3. The Plaintiffs State Plausible Claims Under Articles 24 And 25 Of The Maryland Declaration Of Human Rights

For similar reasons, the Plaintiffs state plausible claims under Articles 24 and 25 of the Maryland Declaration of Rights, based upon the alleged violations of Mr. Thurston's constitutional rights. Article 24 of the Maryland Declaration of Rights is interpreted *in pari materia* with the Due Process Clause of the Fourteenth Amendment. *Doe*, 971 A.2d at 982. Article 25 of the Maryland Declaration of Rights is interpreted *in pari materia* with the Eighth Amendment. *Walker*, 452 A.2d at 1245 n.9 (Md. 1982); *see also Harris*, 276 A.3d at 1093. Here, the Plaintiffs have alleged sufficient factual allegations to support their deliberate indifference claims. For the reasons discussed above, the Plaintiffs have also alleged sufficient factual allegations to state plausible claims under Articles 24 and 25 of the Maryland Declaration of Rights. And so, the Court also DENIES the Defendants' motion to dismiss these claims.

### 4. The Plaintiffs Fail To State A Plausible Intentional Infliction Of Emotional Distress Claim

The Plaintiffs' intentional infliction of emotional distress claim in Count VI of the complaint is, however, more problematic. Under Maryland law, the elements of a claim for intentional infliction of emotional distress are: (1) intentional or reckless conduct; (2) extreme and outrageous conduct; (3) a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress was severe. *Lasater*, 5 A.3d at 89. Such claims are subject to a heightened pleading standard. *See Davenport*, 38 F. Supp. 3d at 692. Each element of an intentional infliction of emotional distress claim must be pled with specificity. *See Foor*, 552 A.2d at 949; *accord Parker*, 787 F. App'x at 820.

To show "intentional or reckless conduct," the Plaintiffs must allege facts that, if proven, would show that "the defendant[s] either *desired* to inflict severe emotional distress, *knew* that such distress was *certain or substantially certain* to result from his conduct, or acted recklessly in deliberate disregard of a *high degree of probability* that the emotional distress will follow." *Foor,* 552 A.2d at 949 (emphasis in original). To show that the harm was a foreseeable consequence of the Defendants' actions, the harm "must be far more precise" than the "general range of harm" sufficient for a negligence claim, because "it is the achievement of that consequence, from which the distress is expected to arise, that lies at the heart" of a claim for intentional infliction of emotional distress. *Id.* In addition, to show "extreme and outrageous conduct," the Plaintiffs must allege facts that, if proven, demonstrate the Defendants' behavior

was "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Lasater*, 5 A.3d at 89 (citing *Harris*, 380 A.2d at 614). Lastly, to show "emotional distress," the Plaintiffs must also allege facts to show that Mr. Thurston "suffered a severely disabling emotional response to the [Defendants'] conduct," and that the distress was so severe that "no reasonable man could be expected to endure it." *Thacker*, 762 A.2d at 197 (citing *Harris*, 380 A.2d at 616).

In this case, the Defendants argue with persuasion that the Plaintiffs cannot make these showings. Notably, the complaint lacks facts to show intentional or reckless conduct, and specifically that the Defendants placed Mr. Thurston in solitary confinement with the intent to harm him or to inflict emotional distress. *See generally* ECF No. 3. The complaint also lacks facts to show "extreme and outrageous" conduct by the Defendants. While the Plaintiffs generally allege that the Defendants created a system whereby individuals with severe mental illness are placed in solitary confinement, despite ample evidence that such placement will necessarily harm those individuals (ECF No. 3 at ¶ 148), there are no facts in the complaint to show that Mr. Thurston was housed contrary to the PGCCC's policies and protocols, or that these policies and protocols are so outrageous as to "go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *See generally* ECF No. 3; *see also Lasater*, 5 A.3d at 89 (citing *Harris*, 380 A.2d at 614).

The complaint is also devoid of facts to show that Mr. Thurston suffered a severely disabling emotional response to the Defendants' conduct and that his distress was so severe that "no reasonable man could be expected to endure it." *Thacker*, 762 A.2d at 197 (citing *Harris*, 380 A.2d at 616). While the Plaintiffs do allege that Mr. Thurston was experiencing symptoms of paranoia on the day of his release from solitary confinement, (ECF No. 3 at ¶ 88), there are no facts in the complaint to show that Mr. Thurston was unable to function or to tend to necessary matters. *See generally* ECF No. 3; *see also Mitchell*, 883 A.2d at 1024-25 (citing *Hamilton*, 502 A.2d at 1064) (a plaintiff must allege facts to show he is unable to function or tend to necessary matters).

23

Given this, the Plaintiffs simply have not pled sufficient facts to satisfy the high standard for an intentional infliction of emotional distress claim under Maryland law. And so, the Court must DISMISS this claim.[6]

## V.    CONCLUSION

In sum, a careful reading of the complaint shows that the Plaintiffs have alleged sufficient facts to state plausible deliberate indifference claims and claims under Articles 24 and 25 of the Maryland Declaration of Rights. But, a careful reading of the complaint also shows that the Plaintiffs fail to state a plausible intentional infliction of emotional distress claim.

In addition, the Defendants have shown that the County is entitled to governmental immunity with regards the Plaintiffs' state law tort claims and that the claims against the Individual Defendants in their official capacities should be dismissed. And so, for the foregoing reasons, the Court:

  (1) **GRANTS-in-PART** and **DENIES-in-PART** the Defendants' motion to dismiss, or, in the alternative, for summary judgment;

  (2) **DISMISSES** all claims against the Individual Defendants in their official capacities;

  (3) **DISMISSES** the Plaintiffs' negligence claim against the County in Count V of the complaint; and

  (4) **DISMISSES** the Plaintiffs' intentional infliction of emotional distress claim in Count VI of the complaint.

A separate Order shall issue.

**IT IS SO ORDERED.**

     s/Lydia Kay Griggsby
     LYDIA KAY GRIGGSBY
     United States District Judge

---

[6] The Defendants' arguments that the Court should dismiss this matter, because the Plaintiffs fail to allege sufficient facts to show that the Individual Defendants' involvement in Mr. Thurston's housing, treatment and tragic death, and because the undisputed material facts show that Mr. Thurston's mental health conditions were properly diagnosed and treated, are not persuasive. And so, to the extent that the Plaintiffs assert deliberate indifference, Maryland Declaration of Rights, and/or negligence claims against the Individual Defendants in their individual capacities, these claims survive the Defendants' motion to dismiss. Because the Court has determined that the official capacity claims against the Individual Defendants should be dismissed, and that the Plaintiffs state plausible deliberate indifference and Maryland Declaration of Rights claims, the Court does not reach the remaining issues raised in the Defendants' motion.